STATE OF NEBRASKA, APPELLEE, V.
MICHAEL W. RYAN, APPELLANT.
601 N.W. 2d 473

Filed September 10, 1999. No. S-97-1035.

636

Steven E. Achelpohl and Michael A. Nelsen, of Hillman, Forman, Nelsen, Childers, Lingo & McCormack, for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

Michael W. Ryan (Ryan) appeals the denial of his second motion for postconviction relief, wherein the district court found that Ryan was not entitled to any relief regarding his conviction and sentence of death for the murder of James Thimm. Ryan's postconviction claims involve two primary issues: (1) an alleged ex parte communication between his sentencing judge and Thimm family members prior to the judge imposing sentence and (2) newly asserted allegations that Ryan was incompetent to stand trial for Thimm's murder. For the reasons set forth in this opinion, we affirm the judgment of the district court and deny Ryan's motion for postconviction relief.

## II. BACKGROUND

In 1986, Ryan was convicted of murder in the deaths of Thimm and Luke Stice. Ryan's second motion for postconviction relief concerns his trial and sentence of death for the first degree murder of Thimm, as did his direct appeal and first motion for postconviction relief. The details surrounding this case are fully set forth in our opinion rendered in Ryan's direct appeal, *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989), *cert. denied* 498 U.S. 881, 111 S. Ct. 216, 112 L. Ed. 2d 176 (1990) (*Ryan I*), and the appeal of his first motion for postconviction relief, *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995) (*Ryan II*). For purposes of Ryan's present appeal, the pertinent facts are as follows:

In April 1986, after a trial by jury, Ryan was found guilty of first degree murder in the death of Thimm. The sentencing hearing for this crime did not begin until September 15, 1986. The Honorable Robert T. Finn presided over Ryan's trial and sen-

tencing for Thimm's murder, as well as Ryan's plea and sentencing for Stice's murder. Judge Finn also presided over the proceedings for the other members of a cult formed by Ryan for their part in the murders, including the trial and sentencing of Ryan's son, Dennis Ryan.

On July 28, 1986, Ryan pled no contest to a charge of second degree murder for the death of Stice and was found guilty. On August 28, Ryan's sentencing hearing for Stice's murder was held. On August 28, after Ryan's sentencing hearing for Stice's murder ended, Judge Finn met with members of the Stice family. During this meeting, Stice family members questioned Judge Finn and the attorney prosecuting the Stice case about the implications of Ryan's plea of no contest to the second degree murder of Stice.

On September 10, 1986, Richard Goos, one of the trial attorneys for Ryan, filed a motion asking Judge Finn to disqualify himself from Ryan's upcoming sentencing hearing regarding Thimm's murder. This motion was based on the fact that Goos had learned of the August meeting with the Stice family and believed that this ex parte conversation required the judge to recuse himself from sentencing Ryan for Thimm's murder.

On September 15, 1986, prior to the sentencing hearing for Thimm's murder, Judge Finn took up Goos' motion to disqualify himself. Goos was concerned about the possibility that the Thimm case had been discussed at the August meeting, and Goos questioned Judge Finn about the content of the discussion between Judge Finn and the Stice family. Judge Finn stated that the meeting "was just to answer questions about the proceedings that went on pertaining to that [Stice] case. There was absolutely no discussion about any other cases other than that [Stice] case." Judge Finn also stated that he generally asked family members at the conclusion of each case if they would like to visit with the court to ask questions about the legal proceedings and that usually families did want to do so. Thereafter, Judge Finn overruled the motion to disqualify himself and proceeded with the sentencing hearing. The sentencing hearing took 2 days, concluding on September 16. On October 16, Judge Finn sentenced Ryan to death for the murder of Thimm.

Ryan then took a direct appeal from his conviction and sentence for Thimm's murder. Among his 60 assignments of error, Ryan asserted that the trial court erred in refusing to disqualify itself from presiding over the September sentencing hearing and that Ryan was denied an impartial judge at trial and during the sentencing hearing, in violation of due process. In part, these assignments were based on the assertion that Judge Finn met ex parte with members of the Stice family in August prior to sentencing Ryan to death, that members of the Thimm family were also present at the Stice meeting, and that the conversation at the Stice meeting had a prejudicial impact on Ryan. In *Ryan I*, we found no merit to any of the assigned errors. In particular, we noted that there was no evidence that Judge Finn met with members of the Thimm family. We also noted that the August 1986 Stice meeting could not have affected Ryan's sentence for Thimm's murder because Judge Finn expressly excluded the Stice murder as a factor in the sentencing process. In his direct appeal, Ryan did not raise any issues regarding his competency to stand trial for Thimm's murder.

In 1991, Ryan filed his first motion for postconviction relief. In preparing for the evidentiary hearing on this motion, Ryan's appointed attorney, Robert Creager, investigated the issue of possible ex parte meetings between Judge Finn and members of the Thimm family. Creager visited with Judge Finn on the telephone to determine if any such meetings took place. Judge Finn told Creager that he had not had any ex parte meetings with the Thimm family and signed an affidavit on April 27, 1993, to that effect. In his affidavit, Judge Finn stated that "no members of the Thimm family were present at the [Stice] meeting; nor did your Affiant have any contacts with members of the Thimm family during the course of the proceedings involving Michael Ryan prior to and including the time of his sentencing."

The district court denied Ryan any relief based on his first motion for postconviction relief. Ryan appealed this decision in *Ryan II*. In his appeal, Ryan assigned 14 errors and 37 additional issues. Ryan again asserted that his due process rights were violated by Judge Finn's refusal to disqualify himself from the September sentencing hearing. In addition, Ryan asserted that he had been deprived of his right to effective assistance of coun-

sel in that his trial counsel had failed to properly raise the issue of judicial misconduct regarding Judge Finn's ex parte communication with the Stice family. We affirmed the district court's decision, noting that Ryan was not prejudiced by the ex parte meeting with the Stice family. We also noted that the due process issues regarding the ex parte meeting with the Stice family had been dealt with on direct appeal and that Ryan was not entitled to relitigate the same issues in a postconviction proceeding. In his first motion for postconviction relief, Ryan did not raise any issues regarding his competency to stand trial for Thimm's murder.

In November 1995, Ryan filed a pro se writ of habeas corpus and stay of execution in federal court. The court appointed counsel to represent Ryan during the habeas proceedings. In the spring of 1996, appointed counsel made a request to amend the habeas complaint to include allegations of an ex parte contact between Judge Finn and Thimm family members. During a deposition taken by Ryan's appointed counsel, Daneda Heppner, Thimm's foster cousin, testified that she and another member of the Thimm family met with Judge Finn in May 1986, after Dennis Ryan was sentenced for his part in Thimm's murder. Heppner is a niece of Carl and Hilda Schmidt, Thimm's foster parents, and considered herself to be Thimm's cousin even though they were not related by blood.

Heppner's information was corroborated by a letter she wrote on May 12, 1986. The letter, in part, discussed a meeting which had occurred on May 9, 1986, between Heppner, Judge Finn, Karen Schmidt (the Schmidts' daughter), and Garnetta Butrick (Stice's grandmother).

Heppner attended the trials for Ryan and other members of Ryan's cult regarding Thimm's murder. She wrote this letter to her family to inform them of the proceedings regarding Dennis Ryan, Ryan's son. In May 1986, Heppner sent the letter to her family, along with some related newspaper clippings. Heppner's father later returned the newspaper clippings and the letter to her.

The letter described in a fairly detailed fashion the meeting on May 9, 1986, between Judge Finn, Heppner, Karen Schmidt, and Butrick. In particular, the letter noted that after Judge Finn pronounced Dennis Ryan's sentence, Judge Finn's bailiff came

over to them and invited them to meet with the judge if they had any questions about the proceedings. The bailiff also asked Dennis Ryan's mother if she would like to meet with the judge, but she declined.

The letter detailed the following information about their conversation: Judge Finn discussed the costs of the various trials and his feelings that the defense attorney fees were excessive. They discussed their religious beliefs and wondered how Ryan could exert such power over the other cult members. Karen Schmidt said that Thimm had not been raised to believe in the kinds of things practiced by the cult. Butrick asked why they did not charge some cult members for their actions and why more was not done to protect her grandson, Stice, from harm. Judge Finn opined that none of the defendants seemed truly sorry for their actions. Judge Finn also explained that a life sentence usually meant that a defendant served about 14 to 15 years before becoming eligible for parole. They discussed the idea that someone should write a book about the case, and Judge Finn offered to make the public record available to Karen Schmidt if she decided to write about it.

The federal court dismissed Ryan's habeas complaint without prejudice, finding that any claim regarding a meeting between Finn and members of the Thimm family must first be properly exhausted under state remedies. The federal court noted that the Nebraska Supreme Court had not had the opportunity to apply due process principles to the claim of an ex parte meeting with members of the Thimm family, since the court had addressed only the meeting with the Stice family in *Ryan I* and *Ryan II*.

Accordingly, in 1997, Ryan filed a second motion for post-conviction relief in the district court for Richardson County. The Honorable Gerald E. Moran was appointed to hear the motion. On May 12 through 16, 1997, Judge Moran held an evidentiary hearing at which Heppner, Karen Schmidt, Judge Finn, Goos, and Creager, among others, testified. Judge Finn testified that he had no recollection of the May 9, 1986, meeting with Heppner, Karen Schmidt, and Butrick. However, Judge Finn agreed that based on the Heppner letter such a meeting did occur. Judge Finn also testified that he had no recollection of the May 9 meet-

ing when he overruled the motion to disqualify himself on September 15, 1986.

Heppner testified that she remembered meeting with Judge Finn on May 9, 1986, at the bailiff's invitation. She also testified that while her letter contained some inaccuracies and dramatic license, it was essentially accurate. Karen Schmidt also testified that the May 9 meeting had taken place.

Goos testified that he had no knowledge during the trial or afterward of a meeting between Judge Finn and members of the Thimm family. His motion to disqualify Judge Finn was based on the ex parte meeting with the Stice family in August. Goos also testified that he believed Ryan had been competent to stand trial for Thimm's murder based on his interaction with Ryan and Ryan's ability to meaningfully participate in his defense throughout the trial. In particular, Goos noted that "what delusions [Ryan] had about Yahweh . . . never seemed to interfere with our conversations or his understanding of the case or what was at stake."

Creager testified that he also had no indication of any meetings between Judge Finn and Thimm family members based on his conversation with Judge Finn and the previously discussed affidavit. Creager further testified that he considered the issue of Ryan's competency to stand trial in preparing for the first motion for postconviction relief. However, he believed that the competency issue was a weak claim and inconsistent with other issues he needed to address.

At the conclusion of the evidentiary hearing, the district court denied Ryan relief on all of his claims. In particular, Judge Moran found that an improper ex parte meeting did occur on May 9, 1986, between Judge Finn and Thimm family members. However, Judge Moran found that any claims related to the May 9 meeting were procedurally barred because Ryan and his counsel knew or reasonably should have known about the May 9 meeting during the direct appeal and the first postconviction proceedings. Judge Moran went on to determine that even if the ex parte meeting between Judge Finn and Thimm family members was not procedurally barred, there was no violation of *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988), and that Ryan suffered no prejudice as a result of the meeting.

Further, Judge Moran found that Ryan was not prejudiced by Judge Finn's refusal to recuse himself. Specifically, Judge Moran found that the content of the May 9, 1986, meeting revealed no bias on the part of Judge Finn regarding Ryan's sentence and that Judge Finn was given no new or additional information regarding Thimm's murder. Because there was no actual prejudice to Ryan, Judge Moran concluded that Ryan's constitutional rights were not violated.

Additionally, Judge Moran found that claims related to Ryan's competency to stand trial were procedurally barred because Ryan could have raised this issue previously and failed to do so in either *Ryan I* or *Ryan II*. Judge Moran further determined that even if such claims were not barred, claims related to competency did not entitle Ryan to relief because Ryan was clearly competent during his trial for Thimm's murder. Finally, Judge Moran found that all claims related to the ineffective assistance of counsel also failed because such claims were procedurally barred or, alternatively, because Ryan was not prejudiced by trial counsels' actions.

### III. ASSIGNMENTS OF ERROR
Ryan assigns 34 legal and factual errors in the district court's order. We rephrase and summarize these errors below.

First, Ryan contends, regarding the ex parte communication between Judge Finn and members of the Thimm family, that the district court erred in (1) its legal conclusion that the May 9, 1986, meeting between Judge Finn and members of the Thimm family did not violate *State v. Barker, supra*, or Ryan's due process rights regarding sentencing; (2) its legal conclusion that any claim arising out of the May 9 meeting was procedurally barred and that the May 9 meeting did not require that Ryan be resentenced; (3) its factual finding that Ryan and his lawyers knew about the May 9 meeting during trial and during subsequent appeals; (4) not finding that Judge Finn attempted to conceal the May 9 meeting; (5) finding that trial evidence was not discussed at the May 9 meeting and that the Thimm family did not discuss their feelings about the possible sentences to be imposed on Ryan; (6) finding that statements made by Judge Finn at the May 9 meeting did not reflect prejudice and bias on Judge

Finn's part; and (7) finding that the presumption of prejudice raised by the May 9 meeting was rebutted beyond a reasonable doubt by the State.

Regarding the cumulative effect of the ex parte conversation, Ryan contends that the trial court also erred in (8) its conclusion that the cumulative effect of Judge Finn's misconduct, in particular, turning his back on Ryan, did not violate Ryan's due process rights; (9) finding that the letter regarding the May 9, 1986, meeting was not new evidence; (10) concluding that it was not plain error for Judge Finn to turn his back on Ryan while Ryan was testifying; and (11) finding that Ryan was not prejudiced by the May 9 meeting.

Ryan also contends that the trial court erred in (12) concluding that a claim for ineffective assistance of counsel regarding the ex parte meeting was procedurally barred; (13) finding that the grounds for this claim, i.e., the letter regarding the May 9, 1986, meeting, were known or discoverable prior to 1996; (14) finding that Ryan was not prejudiced by trial counsel's failure to properly investigate the facts regarding the alleged ex parte meetings; and (15) failing to consider whether trial counsel's failure to investigate the ex parte conversations more fully rendered trial counsel's performance constitutionally deficient.

Regarding the issue of competency, Ryan contends that the trial court erred in (16) its legal conclusion that trial counsel's failure to request a competency hearing did not violate Ryan's right to effective assistance of counsel; (17) concluding that the issue regarding failure to request a competency hearing claim was procedurally defaulted by Ryan's failure to address this in his direct appeal or first postconviction appeal; (18) concluding that it was not plain error for trial counsel not to have requested a competency hearing; (19) finding that Ryan's psychiatrist did not timely disclose his opinion that Ryan was incompetent to stand trial, or timely disclose serious reservations about his competency to stand trial; (20) finding that trial counsel did not observe anything which would cause them to suspect Ryan's incompetence, report this to the judge, and request a competency hearing; (21) its legal conclusion that the failure of the trial judge to order a competency hearing sua sponte did not violate Ryan's due process rights; (22) its conclusion that the claim

that the judge should have ordered a competency hearing was procedurally defaulted; (23) its conclusion that failure of the judge to order sua sponte a competency hearing was not plain error; (24) its conclusion that the facts as presented to Judge Finn did not establish sufficient doubt as to Ryan's competency, requiring him to order a competency hearing; (25) its conclusion that the trial of Ryan did not violate substantive due process because Ryan was not incompetent at the time of trial; (26) its conclusion that it was not plain error to allow Ryan to stand trial while incompetent; (27) its conclusion that the substantive due process claim regarding competency was procedurally defaulted; and (28) its factual finding that Ryan was in fact competent at the time of trial.

## IV. STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Tucker, ante* p. 496, 598 N.W.2d 742; *State v. Smith,* 256 Neb. 705, 592 N.W.2d 143 (1999); *State v. Silvers,* 255 Neb. 702, 587 N.W.2d 325 (1998).

A defendant moving for postconviction relief must allege facts which, if proved, constitute a denial or violation of his or her rights under the state or federal Constitution. *State v. Smith, supra; State v. Silvers, supra.*

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Louthan, ante* p. 174, 595 N.W.2d 917 (1999); *State v. Spotts, ante* p. 44, 595 N.W.2d 259 (1999).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. See, *State v. Bennett,* 256 Neb. 747, 591 N.W.2d 779 (1999); *State v. Moore,* 256 Neb. 553, 591 N.W.2d 86 (1999).

## V. ANALYSIS

### 1. May 9, 1986, Meeting

Ryan claims the district court erred in finding that any claims with regard to the May 9, 1986, meeting are procedurally barred. A motion for postconviction relief cannot be used to

secure review of issues which were known to the defendant and could have been litigated on direct appeal. *State v. Moore, supra*; *State v. Dandridge*, 255 Neb. 364, 585 N.W.2d 433 (1998). Additionally, an appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion. *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). Once a motion for postconviction relief has been judicially determined, any subsequent motion for such relief from the same conviction and sentence may be dismissed unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the prior motion was filed. *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994).

These procedural rules are necessary because postconviction proceedings are not a tool whereby a defendant can continue to bring successive motions for relief. See, *State v. Fletcher*, 253 Neb. 1029, 573 N.W.2d 752 (1998); *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997); *State v. Whitmore*, 238 Neb. 125, 469 N.W.2d 527 (1991) (purpose of affording postconviction relief is not to permit defendant endless appeals on matters already decided). The postconviction process exists to correct prejudicial constitutional error in criminal proceedings. See Neb. Rev. Stat. § 29-3001 (Reissue 1995). The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity. See *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991). A criminal defendant cannot wait to see if some appellate claims will succeed and, when they do not, dust off other claims and subsequently attempt to litigate them. See, *State v. Fletcher, supra*; *State v. Thieszen, supra; State v. Whitmore, supra.*

A defendant is entitled to bring a second proceeding for postconviction relief only if the grounds relied upon did not exist at the time the first motion was filed. *State v. Otey, supra*. We have recognized two circumstances which provide a new ground for relief constituting an exception to the procedural bar in postconviction proceedings. First, if a defendant brings a motion for postconviction relief based on ineffective assistance

of trial or direct appeal counsel which could not have been raised earlier, this is a basis for relief that did not exist at the time of the prior proceeding. *State v. Stewart*, 242 Neb. 712, 496 N.W.2d 524 (1993). Second, if a defendant brings a successive motion for postconviction relief based on newly discovered evidence that was not available at the time the prior motion was filed, this is a basis for relief that did not exist at the time of the prior proceeding because it was not available to the defendant. See, *State v. Keithley*, 247 Neb. 638, 529 N.W.2d 541 (1995); *State v. Lindsay, supra*. Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. See, *State v. Bennett*, 256 Neb. 747, 591 N.W.2d 779 (1999); *State v. Moore*, 256 Neb. 553, 591 N.W.2d 86 (1999).

### (a) Ex Parte Communication

█ Ryan asserts that the Heppner letter is newly discovered evidence establishing that Judge Finn met ex parte with the Thimm family and that, therefore, his claims regarding this meeting are not procedurally barred. Generally, newly discovered evidence is evidence material to the defense that could not with reasonable diligence have been discovered and produced in the prior proceedings. See *State v. Perez*, 235 Neb. 796, 457 N.W.2d 448 (1990).

█ As a threshold matter, we must first determine whether the meeting described in Heppner's letter was ex parte. An ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998). In this case, Judge Moran found that as described in Heppner's letter, Judge Finn had met with members of the Thimm family on May 9, 1986, while Ryan's sentencing for Thimm's murder was a proceeding pending before the court. No notice of the May 9 meeting was given to Ryan or Ryan's counsel. Further, the Heppner letter and Heppner's testimony regarding the meeting describe some discussion of Thimm and the religious beliefs of the cult members who participated in his murder. There was also discussion about Ryan's control over the other members of the cult. The only persons present at the meeting were Karen Schmidt, Heppner, Butrick, and Judge Finn.

Neither Ryan nor his counsel were present. We therefore determine that because the May 9 meeting described in Heppner's letter concerned some issues tangentially related to Thimm's murder (which was the focus of Ryan's upcoming sentencing hearing), and did not include Ryan or his counsel, it was ex parte. See *State v. Lotter, supra.*

### (b) Ex Parte Meeting Procedural Bar

The State contends, and Judge Moran so found, that any issue relating to the May 9, 1986, ex parte contact was procedurally barred. We cannot agree. On his direct appeal, Ryan alleged that Judge Finn had an improper ex parte communication with the Thimm family. We concluded there was no evidence in that record supporting such an allegation. Although during Ryan's sentencing hearing Judge Finn had acknowledged that he generally invited family members to meet with him after the proceedings to ask any questions, we determined that there was simply nothing in the record indicating that Judge Finn had ever met with the Thimm family. Thus, we did not address the impact of an ex parte meeting with the Thimm family.

As we noted in *Ryan I*, the record indicated that Judge Finn had met with the Stice family but "[t]he record [did] not show, however, that the trial judge met with the James Thimm family . . . ." 233 Neb. at 121, 444 N.W.2d at 640. We further noted that "[J]udge [Finn] affirmatively stated, 'There was absolutely no discussion about any other cases than that [Luke Stice] case.' There is nothing in the record indicating anything to the contrary." *Id.* Since this court was unable to find anything in the record on direct appeal indicating that an ex parte meeting occurred with the Thimm family, we certainly would not expect the same record to procedurally bar Ryan from asserting that claim now, in light of new evidence indicating that such a meeting did occur.

Likewise, during Ryan's first postconviction proceeding, his postconviction counsel investigated the possibility that Judge Finn had in fact met ex parte with the Thimm family. Creager interviewed Judge Finn and asked if he had met with the Thimm family at any time prior to Ryan's sentencing. Judge Finn denied any such meeting and signed an affidavit to that effect. Creager

thereafter ended the investigation. Based on Finn's affidavit, this court concludes that the basis Ryan relies upon for relief in this second postconviction proceeding was not available at the time his first postconviction motion was filed.

If we were to determine that the Heppner letter was available to Ryan during his prior postconviction proceeding, we would essentially be requiring Creager to continue the investigation beyond Judge Finn's affidavit. This we are not prepared to do. Once Creager obtained the signed affidavit from Judge Finn swearing that no such meeting had occurred, Creager was entitled to rely upon that information and end his investigation.

Accordingly, we find that the Heppner letter falls into the second circumstance we have recognized as a new ground for relief. The letter is newly discovered evidence which was not available in the prior proceedings. See *State v. Keithley*, 247 Neb. 638, 529 N.W.2d 541 (1995). The Heppner letter was not available to Ryan during either his direct appeal or his first postconviction motion, and there was no other evidence of an ex parte meeting between Judge Finn and the Thimm family. We therefore determine that the meeting between Finn and the Thimm family was not procedurally barred and was appropriately raised in this, Ryan's second postconviction proceeding.

Having determined that issues arising from the ex parte meeting between Judge Finn and the Thimm family are not procedurally barred, we now turn to Ryan's claims.

### (c) *State v. Barker* Analysis

As noted earlier, Judge Moran determined that even if the ex parte meeting between Judge Finn and the Thimm family was not procedurally barred, there was no violation of *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988), and that, in any event, Ryan suffered no prejudice as a result of the meeting.

Ryan, however, contends that *State v. Barker, supra*, was violated and that an automatic remand was required once the ex parte meeting was factually determined to have occurred. Further, Ryan contends that the ex parte meeting violated his constitutional due process rights and that he was prejudiced as a result.

In *State v. Barker, supra*, Barker was charged with second degree murder but was convicted of the lesser-included offense

of manslaughter. On direct appeal, Barker's sole assignment of error was that the sentencing judge failed to recuse himself, as requested by Barker, after the judge had met ex parte with the victim's family prior to sentencing. In response to Barker's motion for recusal, the sentencing judge recounted what had transpired during the ex parte meeting, found that the court was in no way prejudiced by the meeting, and refused to recuse himself. In remanding Barker's case for a new sentencing hearing to be conducted by a different judge, we fashioned a recusal rule based upon the evidentiary concerns regarding judicial testimony.

 We expressly did not reach the constitutional dimensions of Barker's claim regarding ex parte communications because it was unnecessary to the disposition of Barker's direct appeal. We did not analyze the parameters of Barker's due process rights, although we noted that " 'the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause.' " *State v. Barker*, 227 Neb. at 844, 420 N.W.2d at 697 (quoting *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977)). Rather, we focused on the ethical and evidentiary concerns that arise when a judge is asked to recuse himself because of an ex parte communication. We therefore announced a recusal rule based on the rationale of Neb. Evid. R. 605, that " '[t]he judge presiding at the trial may not testify in that trial as a witness.' " *State v. Barker*, 227 Neb. at 848, 420 N.W.2d at 699. The *Barker* recusal rule states that "a judge, who initiates or invites and receives an ex parte communication concerning a pending or impending proceeding, must recuse himself or herself from the proceedings when a litigant requests such recusal." *Id.* at 847, 420 N.W.2d at 699.

The evidentiary dilemma which *State v. Barker, supra*, addresses simply does not exist in this postconviction proceeding. In the case before us, Ryan has supplemented his record with Judge Finn's testimony taken in a proceeding over which Judge Finn was not presiding and at which he was, therefore, not incompetent to testify pursuant to Neb. Evid. R. 605. Thus, there is no need to fashion a remedy for an alleged *Barker* violation when we have the presiding judge's properly obtained testimony

before us. The evidentiary concerns that prompted the *Barker* rule do not exist with regard to Ryan's claims in this proceeding.

Further, postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations. The defendant moving for postconviction relief must allege facts which, if proved, constitute a denial or violation of his or her rights under the *state or federal Constitution*. *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999); *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998). The recusal rule fashioned in *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988), is premised on evidentiary principles and judicial ethics. Although these underlying concerns promote due process and efficiency in the legal process, they are separate and distinct from constitutional rights. The *Barker* rule is not a constitutional right in and of itself.

We have never implied or treated *State v. Barker, supra*, as conferring constitutional protection. In *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), Lotter brought a direct appeal asserting error, in part, because of an ex parte meeting between the prosecutor and the presiding judge. We concluded that Lotter, by failing to make a motion for the judge to recuse himself at the time of the proceedings, had waived the *Barker* rule. If the *Barker* rule were a constitutional right, Lotter's failure to motion for recusal would not have been sufficient by itself to waive his right to the judge's recusal. Waiver would be sufficient only if Lotter had been "personally apprised of the ex parte communication at issue." *State v. Lotter*, 255 Neb. 889, 891, 587 N.W.2d 673, 674 (1999) (supplemental opinion).

In our supplemental opinion to *State v. Lotter*, we noted:
"The requirement in *Barker* that a judge who has participated in an ex parte communication must recuse himself or herself upon request was based upon *Nebraska law*, and not upon federal constitutional grounds. Thus, *Barker* and its progeny do not dispose of Lotter's claim that the ex parte communication in this case presented a threat to the impartiality of the trial court and violated his rights under the Due Process Clause of the 14th Amendment to the U.S. Constitution."
(Emphasis supplied.) 255 Neb. at 890, 587 N.W.2d at 674.

Simply put, *State v. Barker, supra,* is not premised on federal or Nebraska constitutional law and in no way expands due process protection in Nebraska. To hold otherwise would be inconsistent with our holding in *State v. Lotter.* Finding *Barker* itself inapplicable to Ryan's postconviction claims, we turn to the underlying constitutional issue of whether Ryan's due process rights were violated by the May 9, 1986, ex parte meeting.

### (d) Due Process

Ryan contends that his due process rights were violated because he was sentenced for Thimm's murder by Judge Finn after Judge Finn had engaged in an improper ex parte contact with Thimm family members. Ryan asserts that this ex parte meeting biased Judge Finn and denied Ryan his right to an impartial judge and that, therefore, Judge Moran's findings to the contrary are clearly erroneous.

The right to an impartial judge is guaranteed under the Due Process Clause of the 14th Amendment to the U.S. Constitution, *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972), and under the due process clause of Neb. Const. art. I, § 3. See *State v. Lotter, supra* (supplemental opinion). This right extends to both the trial and the sentencing hearing. *Gardner v. Florida,* 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). The parameters of this right are coextensive under the federal and Nebraska Constitutions. See *State v. Lotter, supra* (supplemental opinion).

In our supplemental opinion to *State v. Lotter,* we analyzed a defendant's due process right to an impartial judge. We considered the claim that Lotter's due process right to an impartial judge was violated because the presiding judge conducted an ex parte meeting with the prosecutor during the proceedings. We concluded that Lotter's due process rights were not violated, using the approach enunciated by the Eighth Circuit in *Dyas v. Lockhart,* 705 F.2d 993 (8th Cir. 1983) (*Dyas I*), cert. denied 464 U.S. 982, 104 S. Ct. 424, 78 L. Ed. 2d 359. See, also, *Dyas v. Lockhart,* 771 F.2d 1144 (8th Cir. 1985) (*Dyas II*) (appeal after remand), *Dyas v. Lockhart,* 878 F.2d 1105 (8th Cir. 1989) (*Dyas III*) (second appeal after remand).

In *Dyas I*, the defendant was convicted of capital felony murder and sentenced to life imprisonment without the possibility of parole by the State of Arkansas. The impartiality of the presiding judge was questioned in federal habeas proceedings in part because the judge was the uncle of the prosecuting attorney, and respectively the brother and father of two deputy prosecuting attorneys who participated in the case.

The *Dyas I* court first looked to the U.S. Supreme Court's standard as set out in *Ward v. Village of Monroeville, supra*. In *Ward*, the Supreme Court reiterated its previously announced standard that subjecting a defendant to a trial before a judge having a direct personal pecuniary interest in convicting the defendant caused a denial of due process in violation of the 14th Amendment. See, also, *Connally v. Georgia*, 429 U.S. 245, 97 S. Ct. 546, 50 L. Ed. 2d 444 (1977). *Ward* dealt with a situation where the judge also served as mayor. The Court found that the judge had a direct pecuniary interest in convicting the defendant because a conviction would result in a fine, which would enhance the municipality's revenue.

The Court did not require the defendant in *Ward* to prove actual bias. Rather, the test was whether the defendant could show that the judge was put in a situation which might lead him " 'not to hold the balance nice, clear and true between the State and the accused . . . .' " 409 U.S. at 60. When the defendant can meet this standard, it is considered structural error, which requires "automatic reversal." *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999). Structural error analysis is required when the error complained of deprives the defendant of basic protections without which the criminal trial process cannot reliably serve its function as a vehicle for determination of guilt or innocence, or when the error affects the entire framework of the proceedings. *Id.* All other types of errors which occur within the trial and sentencing process itself are subject to harmless error review. *Id.*

### (i) Structural Error

In *Dyas I*, the Eighth Circuit declined to apply the structural error standard. The court found that the facts of the case did not show that the judge was "unable to hold the proper balance

between the state and the accused." *Dyas I*, 705 F.2d at 997, citing *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927). Instead, the *Dyas* court required that the defendant show actual bias on the part of the judge to be entitled to any relief. The court then remanded the cause for an evidentiary hearing where Dyas could attempt to show actual bias.

Similarly, in the supplemental opinion to *State v. Lotter*, we first considered the structural error standard by addressing the claim that the ex parte contact with the prosecutor showed that the judge " 'had such a strong personal or financial interest in the outcome of the trial that he was unable to hold the proper balance between the state and the accused.' " 255 Neb. 889, 892, 587 N.W.2d 673, 675 (1999), quoting *Dyas I*. We concluded that the facts in Lotter's case did not meet the structural error standard.

Ryan contends, as did Lotter, that his due process right to an impartial judge was violated because of an ex parte contact. We note that because this ex parte meeting occurred after Ryan's trial for Thimm's murder was concluded, it could not have affected the judge's impartiality during the jury trial.

As in the supplemental opinion to *State v. Lotter*, we conclude that Judge Finn's ex parte meeting with the Thimm family was "not sufficient, under the Due Process Clause, to suggest that the trial judge 'had such a strong personal or financial interest in the outcome of the trial that he was unable to hold the proper balance between the state and the accused.' " 255 Neb. at 892, 587 N.W.2d at 675. This ex parte meeting did not place Judge Finn in an inherently conflicting role, as set out in *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972), because the record does not show that Judge Finn had a direct personal pecuniary interest in the outcome of the case. Admittedly, some of Judge Finn's comments do evidence a kind of pecuniary interest in discussing the cost of the trials and defense attorney fees. However, this is not the type of direct pecuniary interest found in *Ward*, where a judge could enhance his or her own salary by a finding of guilt.

Also, it is constitutionally permissible for a judge to consider as part of the sentencing process the impact of the crime on a victim's family. *Payne v. Tennessee*, 501 U.S. 808, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) (overruling *Booth v.*

*Maryland,* 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987)). While such consideration should take place at the sentencing hearing, the fact that such information is not inherently prejudicial to the defendant weighs against adopting the structural error standard concerning ex parte contacts with victims' families. See *id.*

Accordingly, we decline to apply the structural error standard to Ryan's claims. The fact that Judge Finn met ex parte with Thimm family members prior to sentencing Ryan for Thimm's murder does not require automatic reversal. Judge Finn was not placed in a situation where he was unable to properly hold the balance between the State and the accused during Ryan's sentencing hearing. See *Ward v. Village of Monroeville, supra.*

### (ii) Actual Prejudice

Since we conclude that the structural error standard is not applicable to Ryan's claim, we must next decide whether the district court erred in finding that the Thimm ex parte meeting resulted in no actual prejudice to Ryan. As we held in our supplemental opinion to *State v. Lotter,* a defendant must show that "an instance of actual bias on the part of the trial court" occurred in order to indicate a constitutional violation of the right to an impartial judge. 255 Neb. at 892, 587 N.W.2d at 675, citing *Dyas III, supra.* Applying the Lotter actual bias test, we determine the finding of Judge Moran that the May 9, 1986, meeting did not bias Judge Finn is not clearly erroneous.

While Judge Finn's behavior in conducting the May 9, 1986, meeting was ethically improper, Judge Moran found that Judge Finn's "idle musing" did not indicate a bias such that Judge Finn would impose Ryan's sentence out of prejudice rather than on the law and facts of the case. Based on all the evidence presented, Judge Moran found that there was no discussion of Ryan's upcoming sentencing for Thimm's murder at the May 9 meeting.

Judge Moran also found that while Thimm was mentioned in the conversation, this was clearly not the focus of the conversation. The conversation "centered around Dennis Ryan and other co-defendants who turned state's evidence." Judge Moran also found that the May 9, 1986, meeting did not provide Judge Finn with any information that had not already been presented to

Judge Finn at Ryan's trial. Finally, Judge Moran determined that Judge Finn's sentencing order was based upon documented evidence and the record before the trial court at the time of sentencing. These findings are not clearly erroneous. See *State v. Tucker, supra.*

Further, Judge Moran found no evidence that Judge Finn deliberately concealed the ex parte meeting with the Thimm family. Rather, Judge Finn's testimony before Judge Moran was that by the time the motion to disqualify was filed, Judge Finn had forgotten the May 9, 1986, meeting. We note that the May 9 meeting took place after Dennis Ryan's sentencing, not after a proceeding involving Ryan and that further, it occurred 4 months before Goos filed his motion to disqualify.

The record shows that the concern during the September 15, 1986, hearing on the motion to disqualify was the August meeting with the Stice family, after Ryan's sentencing hearing for Stice's murder. Goos testified before Judge Moran that he specifically asked Judge Finn if the Thimm murder was discussed at the Stice meeting and was assured that the Stice meeting was about only the Stice murder. There is nothing in this record, or the record from either *Ryan I* or *Ryan II,* to indicate otherwise about the Stice meeting.

Judge Finn's admission in 1986, while considering the motion to disqualify, that he generally met with victims' families, supports the conclusion that Judge Finn did not deliberately conceal the May 9, 1986, meeting. Judge Finn would not have forthrightly told counsel about generally meeting with victims' families if his intent were to conceal the May 9 meeting. The district court was not clearly erroneous in failing to find that Judge Finn deliberately concealed the May 9 meeting.

Judge Finn's actions do not show actual bias, but, rather, a lack of judicial professionalism. Judge Finn met privately with Thimm family members at the conclusion of Dennis Ryan's sentencing for Thimm's murder, while separate proceedings involving Ryan's sentencing for Thimm's murder were still pending. The May 9, 1986, meeting was improper because Ryan's sentencing for Thimm's murder was still pending before Judge Finn when the meeting took place, but the content of the May 9 meet-

ing does not show actual bias on the part of Judge Finn. See *State v. Lotter*, 255 Neb. 889, 587 N.W.2d 673 (1999) (supplemental opinion).

We determine that the district court's finding that the May 9, 1986, meeting resulted in no actual prejudice to Ryan is not clearly erroneous. See *State v. Tucker, ante* p. 496, 598 N.W.2d 742 (1999). While Judge Finn erred in participating in the May 9 meeting, such error was harmless because there is no indication from the record that an instance of actual bias on the part of Judge Finn occurred. See, *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (noting that structural error standard is limited to very narrow class of cases); *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (death penalty case where court applied harmless error analysis to defendant's coerced confession); *State v. Lotter, supra* (supplemental opinion) (applying harmless error standard). Thus, Ryan's due process right to an impartial judge was not violated under the state or federal Constitution at his sentencing hearing for Thimm's murder. See, *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972); *State v. Lotter, supra* (supplemental opinion).

### (e) Cumulative Judicial Misconduct

Ryan also contends that the cumulative effect of the May 9, 1986, meeting shows that Judge Finn did not meet the constitutional standard of impartiality. Ryan cannot raise the issues that counsel litigated on direct appeal concerning the impact of Judge Finn's turning his back during Ryan's testimony simply by rephrasing this as being cumulative judicial misconduct. See *State v. Ditter*, 255 Neb. 696, 587 N.W.2d 73 (1998). In *Ryan I*, we found that Ryan was not prejudiced by the fact that Judge Finn turned his back during Ryan's testimony. Further, Ryan was not prejudiced by the ex parte contact with Thimm family members. Even considering these two incidents together, they do not indicate an instance of actual bias on the part of Judge Finn at Ryan's sentencing hearing. See *State v. Lotter, supra* (supplemental opinion). Thus, considered cumulatively, the May 9 meeting did not violate Ryan's right to an impartial judge.

## (f) Ineffective Assistance of Counsel

Ryan further contends that his constitutional right to effective assistance of counsel was denied in that trial counsel failed to discover the May 9, 1986, meeting. Ryan did raise ineffectiveness of counsel in both his direct appeal and his first motion for postconviction relief regarding the ex parte meeting in August with the Stice family. However, the basis he now relies on for relief, namely, the May 9 meeting with the Thimm family, was not available to him in these prior proceedings. We find that Ryan's claim of ineffective counsel as it relates to the May 9 meeting is therefore not procedurally barred. See *State v. Keithley*, 247 Neb. 638, 529 N.W.2d 541 (1995). Because this claim is not procedurally barred, we turn to the issue of whether Ryan was denied effective assistance of counsel.

In order to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), requires that a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Tucker, ante* p. 496, 598 N.W.2d 742 (1999); *State v. Hunt*, 254 Neb. 865, 580 N.W.2d 110 (1998). The two prongs of this test may be addressed in either order. If it is more appropriate to dispose of an ineffectiveness claim due to a lack of sufficient prejudice, that course should be followed. *State v. Tucker, supra*; *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998). The prejudice component of the test focuses on whether counsel's performance rendered the results of the proceeding unreliable or fundamentally unfair by depriving a defendant of a substantive or procedural right. *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995). A defendant has the burden to show how an attorney's actions or inactions prejudiced the defendant. *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998); *State v. Williams, supra.*

Ryan has assigned two errors regarding ineffective assistance of counsel. First, Ryan asserts that the trial court erred in con-

cluding that a claim for ineffectiveness of counsel was procedurally barred. In his brief, Ryan argues that if the court were to find that all claims related to the ex parte meeting with the Thimm family were procedurally barred, this procedural bar would be the direct result of trial counsel's ineffectiveness. Because we have determined that there is no procedural bar against claims related to the May 9, 1986, meeting, Ryan has not been prejudiced in this manner.

Second, Ryan contends that the court erred in finding that trial counsel's failure to properly investigate the facts regarding possible ex parte meetings did not prejudice Ryan. We determine that Ryan has failed to show prejudice on this issue also. Ryan has not shown that the result of his sentencing hearing was rendered unreliable or fundamentally unfair by the failure of trial counsel to discover the May 9, 1986, meeting. As previously discussed, the May 9 meeting with Judge Finn and Thimm family members was not structural error; that is, Ryan was not constitutionally entitled to an automatic resentencing based on the fact that the May 9 meeting occurred. See *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

In retrospect, if the information concerning the May 9, 1986, meeting with the Thimm family had been available on direct appeal, the language of *Ryan I* implies that Ryan would have received a new sentencing hearing based on *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988). However, the loss of the *Barker* rule did not render Ryan's sentencing hearing before Judge Finn fundamentally unfair or unreliable in its result. As Judge Moran determined, and we concur, Judge Finn was not biased by the May 9 meeting. Thus, whether or not trial counsel's performance was deficient, Ryan has failed to show any prejudice that resulted because trial counsel did not discover the May 9 meeting. An impartial judge sentenced Ryan to death, a judge who properly followed the laws of this state regarding the death penalty. The sentencing hearing was not fundamentally unfair to Ryan, nor was it rendered unreliable by the May 9 meeting which occurred 4 months prior to the hearing.

Judge Moran's finding that Ryan suffered no prejudice as a result of trial counsels' actions is amply supported by the record and, thus, is not clearly erroneous. What the record does show,

as set out in *Ryan I*, are the circumstances of Thimm's agonizing torture and death. Suffice it to say that Ryan and other cult members horribly tortured Thimm for 3 days and that Ryan finally stomped on Thimm's chest until he died. In their brief and at oral argument, Ryan's counsel conceded that the point of a new sentencing hearing was not that the result of the hearing would be different, but that the alleged bias of Judge Finn would be removed from the process. However, Judge Moran found that the ex parte communication did not result in actual bias on the part of Judge Finn, a finding which we determine not to be clearly erroneous. Thus, the "prejudice" element of the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), is not met regardless whether counsels' performance in not discovering the communication was deficient. Ryan has not been prejudiced by trial counsels' action or inaction regarding the May 9, 1986, meeting. Thus, this claim is without merit.

Accordingly, we find that all of Ryan's claims related to the May 9, 1986, ex parte meeting do not entitle Ryan to any relief regarding his trial or sentencing.

## 2. COMPETENCY

Finally, we turn to the issue of Ryan's competency to stand trial for Thimm's murder. Unlike the claims related to the ex parte meeting with the Thimm family, these claims are not based on any newly discovered evidence. Because Ryan has failed to raise this issue in either *Ryan I* or *Ryan II*, the claims related to Ryan's competency to stand trial are procedurally barred unless Ryan can meet the aforementioned exception to the procedural bar rule. *State v. Fincher*, 191 Neb. 446, 216 N.W.2d 172 (1974). See, also, *State v. Keithley*, 247 Neb. 638, 529 N.W.2d 541 (1995); *State v. Stewart*, 242 Neb. 712, 496 N.W.2d 524 (1993). That is, Ryan must affirmatively show that the basis he now relies upon for relief was unavailable when prior motions were filed. See, *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998); *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994).

The facts concerning Ryan's mental state at the time of trial were available at the time of his first motion for postconviction relief and at the time of his direct appeal. The reports on Ryan's

mental condition, prepared before Ryan's trial for Thimm's murder, were fully available to Ryan and his counsel at all times. There has been no newly discovered evidence on this issue. The testimony of the medical experts at the evidentiary hearing before Judge Moran was based solely on a review of the original reports prepared in 1986. Further, the issue of competency was considered and discarded by counsel in Ryan's first postconviction proceeding as a weak claim for relief.

Because Ryan's competency to stand trial was not raised in either *Ryan I* or *Ryan II* and because Ryan alleges no new basis for relief on the issue of his competency, we find that all claims related to Ryan's competency to stand trial are procedurally barred. Allowing Ryan to first raise the issue of competency after more than 10 years of appellate litigation during which Ryan chose not to raise the issue would make a mockery of the finality of the judicial process. See *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991).

We note that Ryan also raises the claim of ineffectiveness of trial counsel regarding his competency to stand trial. This is procedurally barred along with the other competency claims. See *State v. Stewart, supra.* Ineffectiveness of counsel regarding the issue of competency could have been addressed by postconviction counsel in *Ryan II* and was deliberately not raised.

## VI. CONCLUSION

The district court erred in finding that Ryan and his lawyers knew or reasonably should have known about the May 9, 1986, meeting during direct appeal and the first postconviction proceedings. The district court also erred in its conclusion that any claims arising out of the May 9 meeting were procedurally barred. However, the district court correctly determined that the meeting between Judge Finn and members of the Thimm family did not violate Ryan's constitutional right to due process or effective assistance of counsel in that Ryan suffered no actual prejudice from the May 9 meeting. The district court also correctly determined that all claims related to the issue of Ryan's competency at the time of trial are procedurally barred.

Having considered all of Ryan's assignments of error, we conclude that Ryan is entitled to no relief. Ryan has failed to

show that his constitutional rights were violated. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.