State of Nebraska, appellee, v.
Michael W. Ryan, appellant.
___ N.W.2d ___

Filed April 18, 2014.    No. S-12-215.

1. **Postconviction: Appeal and Error.** In appeals from postconviction proceedings, an appellate court independently resolves questions of law.
2. ____: ____. Whether a movant has failed to state a claim for postconviction relief is a question of law.
3. **Jurisdiction: Words and Phrases.** Strictly speaking, "jurisdiction" refers to a court's adjudicatory authority. Accordingly, the term "jurisdictional" properly applies only to prescriptions delineating the classes of cases (subject matter jurisdiction) and the persons (personal jurisdiction) implicating that authority.
4. **Constitutional Law: Judgments: Postconviction: Jurisdiction.** Whether a factual circumstance exists whereby the judgment is void or voidable under the state or U.S. Constitution is an element of a claim for postconviction relief, not a jurisdictional prerequisite.
5. **Judgments: Sentences: Postconviction.** Method-of-execution claims do not challenge the underlying conviction or the sentence itself (which is the judgment in a criminal case); so, a method-of-execution claim, even if successful, would not render the judgment void or voidable, as required by Neb. Rev. Stat. § 29-3001 (Cum. Supp. 2012).

Appeal from the District Court for Richardson County: Daniel E. Bryan, Jr., Judge. Affirmed.

James R. Mowbray and Robert W. Kortus, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

Michael W. Ryan, pro se.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Miller-Lerman, JJ., and Inbody, Chief Judge.

Connolly, J.

SUMMARY

Michael W. Ryan, convicted of first degree murder and sentenced to death,[1] moved for postconviction relief. The district

---

[1] See *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989).

court dismissed his motion without an evidentiary hearing. Because Ryan's motion failed to state a claim for postconviction relief, either because his claims were without legal basis or because they were not cognizable in postconviction, we affirm.

## BACKGROUND

### Factual and Procedural Background

We affirmed Ryan's conviction and sentence on direct appeal.[2] The underlying facts are long and brutal and need not be repeated here. Since our affirmance, Ryan has filed two other postconviction motions, both of which were denied.[3] Ryan also filed for federal habeas relief, which the federal courts denied.[4] We have, at various times, ordered Ryan to be executed, but each time we subsequently stayed the execution. Our last order scheduling Ryan's execution was January 11, 2012, but following Ryan's motion for postconviction relief, filed on February 13, and subsequent emergency motion for a stay, we again stayed Ryan's execution. The district court dismissed Ryan's motion without an evidentiary hearing, and he appealed.

### District Court's Order Dismissing Ryan's Postconviction Motion

In its order dismissing Ryan's motion, the court set forth each of Ryan's alleged grounds for postconviction relief, which we summarize as follows:

1. The State illegally obtained stolen thiopental, in violation of Nebraska law. The State's attempt to use that drug to conduct Ryan's execution denies Ryan due process and equal protection under both the state and federal Constitutions.

---

[2] See *id*.

[3] See, *State v. Ryan*, 257 Neb. 635, 601 N.W.2d 473 (1999), *abrogated, State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008); *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995).

[4] See *Ryan v. Clarke*, 281 F. Supp. 2d 1008 (D. Neb. 2003), *affirmed* 387 F.3d 785 (8th Cir. 2004).

  2. The State's pattern of bad faith in seeking an execution date for Ryan denies Ryan due process under both the state and federal Constitutions.

  3. The Legislature passed 2009 Neb. Laws, L.B. 36, which changed Ryan's "final" sentence by mitigating the method of execution from electrocution to lethal injection, and is in violation of the Board of Pardons' exclusive commutation power and the separation of powers provisions of the state Constitution.

  4. The Legislature's passing of L.B. 36 was an improper abdication and delegation of its exclusive authority to determine the particular quantity and type of drugs to be used in lethal injection, in violation of the separation of powers provisions in the state Constitution.

  5. The Legislature's passing of L.B. 36 changed the method of execution to lethal injection and, along with the Nebraska Department of Correctional Services' creating a new execution protocol after Ryan's conviction became final, violates the Ex Post Facto Clauses of both the state and federal Constitutions.

    In dismissing Ryan's motion, the court observed that "it [could] only enter relief in cases where a prisoner in custody under sentence assert[ed] facts that claim[ed] a right to be released on grounds that there was a denial or infringement of state or federal constitutional rights that would render the judgment of conviction void or voidable." The court characterized Ryan's alleged grounds for relief as "not deal[ing] with the judgement [sic] of the death sentence," but, rather, "deal[ing] with the method of inflicting the death penalty." Thus, the court observed, Ryan's claims were not cognizable in postconviction.[5] The court therefore dismissed Ryan's motion without an evidentiary hearing.

## ASSIGNMENT OF ERROR

    Ryan assigns, restated, that the district court erred in dismissing his motion for postconviction relief without an evidentiary hearing.

---

[5] See, *Mata, supra* note 3; *State v. Moore*, 272 Neb. 71, 718 N.W.2d 537 (2006).

STANDARD OF REVIEW

[1,2] In appeals from postconviction proceedings, we independently resolve questions of law.[6] Whether a movant has failed to state a claim for postconviction relief is a question of law.[7]

ANALYSIS

As an initial matter, the parties dispute whether the court dismissed Ryan's motion on jurisdictional grounds. A review of the court's order suggests that the court understood its ruling to be based on jurisdictional grounds. Relying on our decision in *State v. Lotter*,[8] the court stated that Neb. Rev. Stat. § 29-3001 (Cum. Supp. 2012) limited its jurisdiction to grant postconviction relief. And because the court concluded that Ryan was not entitled to postconviction relief under § 29-3001, it dismissed his motion.

[3] In *Lotter*, citing a Nebraska Court of Appeals decision, we stated that "[a]bsent a factual circumstance whereby the judgment is void or voidable under the state or U.S. Constitution, the court has no jurisdiction to grant postconviction relief."[9] Our language, however, was imprecise. Courts, including this court,[10] have frequently used the term "jurisdiction" too loosely.[11] Strictly speaking, "'[j]urisdiction' refers to 'a court's adjudicatory authority.'"[12] "Accordingly, the term 'jurisdictional' properly applies only to 'prescriptions delineating the classes

---

[6] See, e.g., *State v. Dragon, ante* p. 519, 843 N.W.2d 618 (2014).

[7] See *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

[8] *State v. Lotter*, 278 Neb. 466, 771 N.W.2d 551 (2009).

[9] *Id*. at 475, 771 N.W.2d at 559 (citing *State v. Murphy*, 15 Neb. App. 398, 727 N.W.2d 730 (2007)). See, also, *State v. Boppre*, 280 Neb. 774, 790 N.W.2d 417 (2010).

[10] See, e.g., *Nebraska Republican Party v. Gale*, 283 Neb. 596, 812 N.W.2d 273 (2012).

[11] See, e.g., *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); *State v. Armstrong*, 146 Idaho 372, 195 P.3d 731 (Idaho App. 2008).

[12] *Reed Elsevier, Inc*. *v. Muchnick*, 559 U.S. 154, 160, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010).

of cases (subject matter jurisdiction) and the persons (personal jurisdiction)' implicating that authority."[13] Here, the court clearly had both.

[4] Whether a factual circumstance exists whereby the judgment is void or voidable under the state or U.S. Constitution is an element of a claim for postconviction relief, not a jurisdictional prerequisite. Thus, where such a circumstance is lacking, the proper course is to dismiss for failure to state a claim, not for lack of jurisdiction. And here, despite the labeling confusion, that is effectively what the court did. We review de novo that determination.[14]

[5] As set forth above, Ryan's motion contained five claims for postconviction relief. The district court characterized all of Ryan's claims as "deal[ing] with the method of inflicting the death penalty." If that characterization is correct, Ryan's claims would not be cognizable in postconviction.[15] This is because such claims do not challenge the underlying conviction or the sentence itself (which is the judgment in a criminal case[16]); so, a method-of-execution claim, even if successful, would not render the judgment void or voidable, as required by § 29-3001(1).[17]

We agree with the court's characterization with one exception. Ryan's second claim challenges whether the State can put him to death *at all*, no matter the method. Ryan argues that the State, through its alleged dilatory conduct and scheduling of "sham executions," violated his due process rights and effectively forfeited its right to execute him.[18] This claim is not a method-of-execution claim. Nevertheless, on our de novo review, we conclude that this claim does not state a claim for

---

[13] *Id.*, 559 U.S. at 160-61.

[14] See *Edwards*, *supra* note 7.

[15] See *Moore*, *supra* note 5.

[16] See, e.g., *State v. Jiminez*, 283 Neb. 95, 808 N.W.2d 352 (2012).

[17] See *Moore*, *supra* note 5.

[18] See brief for appellant at 33.

postconviction relief. Despite Ryan's argument to the contrary, his claim appears to be similar to the claim we rejected in *State v. Moore*.[19] And the only authority he provides for his claim is either inapposite or not authority at all.[20]

As for Ryan's other four claims, we agree with the court's characterization: they are method-of-execution claims. Ryan agrees that the first claim is a method-of-execution claim, but disagrees as to the other three. Our review of his motion and brief, however, indicates that they too are method-of-execution claims. Ryan's third claim alleges that the Legislature improperly commuted his sentence "by mitigating the method of execution from electrocution to lethal injection." Ryan's fourth claim alleges that the Legislature improperly delegated its responsibility "to determine the particular quantity and type of drug(s) to be used in lethal injection" to the executive branch. And Ryan's fifth claim alleges that the change to lethal injection violated the ex post facto provisions of the federal and state Constitutions. Each of these claims takes issue (in different ways) with the method of execution, not the sentence of death. Thus, they are method-of-execution claims.

As the court recognized, we held in *State v. Moore* that such claims are not cognizable in postconviction.[21] There, the defendant's petition for postconviction relief challenged the electrocution protocol for implementing the death penalty. We observed that the defendant's petition did not challenge "either

---

[19] *State v. Moore*, 256 Neb. 553, 591 N.W.2d 86 (1999).

[20] See, *Baze v. Rees*, 553 U.S. 35, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008) (citing *Francis v. Resweber*, 329 U.S. 459, 67 S. Ct. 374, 91 L. Ed. 422 (1947)); *Johnson v. Bredesen*, 558 U.S. 1067, 130 S. Ct. 541, 175 L. Ed. 2d 552 (2009) (Stevens, J., statement respecting denial of certiorari; Breyer, J., joins); *Thompson v. McNeil*, 556 U.S. 1114, 129 S. Ct. 1299, 173 L. Ed. 2d 693 (2009) (Stevens, J., statement respecting denial of certiorari); *Lackey v. Texas*, 514 U.S. 1045, 115 S. Ct. 1421, 131 L. Ed. 2d 304 (1995) (Stevens, J., memorandum respecting denial of certiorari; Breyer, J., agrees).

[21] *Moore, supra* note 5.

his underlying conviction or the judgment of a sentence of death."[22] We concluded, after reviewing the U.S. Supreme Court's cases in *Nelson v. Campbell*[23] and *Hill v. McDonough*,[24] that the defendant's claim was not cognizable in postconviction, which is reserved for claims which would render the judgment void or voidable.[25]

We logically reaffirmed that holding in several cases since; namely, in *State v. Torres*,[26] *State v. Ellis*,[27] and *State v. Mata*,[28] in which we held that the method of execution is separate from the sentence of death. Though those cases arose on direct appeal, it follows that because the method of execution is separate from the sentence, a challenge to the method of execution would not render the sentence void or voidable. So, such challenges are not cognizable in postconviction.

But Ryan seeks to change our law, or at least how it applies in this particular case. Ryan argues that *State v. Moore* was wrong, in that it misinterpreted the U.S. Supreme Court's decisions in *Nelson* and *Hill* and incorrectly held that method-of-execution claims could not be brought in postconviction. Ryan also argues that *Moore* is no longer controlling because there have been changes in Nebraska's laws regarding the death penalty, which under the reasoning of *Nelson* and *Hill*, affect whether a method-of-execution claim is cognizable in postconviction.

Ryan relies on *Nelson* and *Hill*, both of which address the proper avenue (federal habeas or 42 U.S.C. § 1983 (2006))

---

[22] *Id*. at 78, 718 N.W.2d at 543.

[23] *Nelson v. Campbell*, 541 U.S. 637, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004).

[24] *Hill v. McDonough*, 547 U.S. 573, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006).

[25] See *Moore, supra* note 5.

[26] *State v. Torres*, 283 Neb. 142, 812 N.W.2d 213 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 244, 184 L. Ed. 2d 129.

[27] *State v. Ellis*, 281 Neb. 571, 799 N.W.2d 267 (2011).

[28] *Mata, supra* note 3.

for bringing particular method-of-execution claims in federal court. We first note that we, like Ryan, agree that these cases are informative here. Both cases involved method-of-execution claims. Both cases noted that claims challenging the fact of the conviction or the duration of the sentence must be brought in federal habeas because they fall within the "core" of habeas corpus.[29] Such claims, by analogy, would be cognizable in postconviction because, if meritorious, they would render the judgment void or voidable. And in both cases, the Court discussed circumstances leading it to conclude that the particular claim did not attack the conviction or sentence and therefore was proper under § 1983.[30] Because of Ryan's reliance on *Nelson* and *Hill*, we believe it helpful to set out in depth the facts and reasoning from both cases.

In *Nelson v. Campbell*, the petitioner, through § 1983, challenged a particular aspect of Alabama's lethal injection protocol.[31] Specifically, the petitioner challenged Alabama's use of a "'cut-down'" procedure to access his veins as cruel and unusual under the Eighth Amendment. The issue was whether § 1983 was the appropriate avenue to bring the claim or whether it sounded in federal habeas.[32]

The U.S. Supreme Court first noted that a prisoner must bring his claim in federal habeas when it challenges "the fact of his conviction or the duration of his sentence," but that he may bring his claim in § 1983 when it "merely challenge[s] the conditions of [his] confinement."[33] After observing that it had not yet had occasion to consider how to characterize a method-of-execution claim, the Court explained that it was not a simple matter:

> Neither the "conditions" nor the "fact or duration" label is particularly apt. A suit seeking to enjoin a particular

---

[29] See, *Hill, supra* note 24; *Nelson, supra* note 23.

[30] See *id.*

[31] *Nelson, supra* note 23.

[32] *Id.*, 541 U.S. at 639.

[33] *Id.*, 541 U.S. at 643.

means of effectuating a sentence of death does not directly call into question the "fact" or "validity" of the sentence itself—by simply altering its method of execution, the State can go forward with the sentence. . . . On the other hand, imposition of the death penalty presupposes a means of carrying it out. In a State such as Alabama, where the legislature has established lethal injection as the preferred method of execution, . . . a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself. A finding of unconstitutionality would require statutory amendment or variance, imposing significant costs on the State and the administration of its penal system. And while it makes little sense to talk of the "duration" of a death sentence, a State retains a significant interest in meting out a sentence of death in a timely fashion.[34]

The Court, however, concluded that "[w]e need not reach here the difficult question of how to categorize method-of-execution claims generally."[35] It reasoned that, had the cut-down procedure been used for some other purpose than to execute the petitioner (say, for medical treatment), a claim that such a procedure was unconstitutional would sound in § 1983. The Court saw no reason to treat the claim differently just because it was a precursor to an execution. Moreover, the court observed that the cut-down procedure was not statutorily mandated and that the petitioner conceded there were acceptable alternatives to gain access to his veins.[36] Had that not been the case, however, the Court noted that he "might have a stronger argument that success on the merits, coupled with injunctive relief, would call into question the death sentence itself."[37] The Court concluded that in those particular

---

[34] *Id.*, 541 U.S. at 644.

[35] *Id.*

[36] *Id.*

[37] *Id.*, 541 U.S. at 645.

circumstances, the petitioner's claim was cognizable under § 1983.[38]

In *Hill v. McDonough*, the petitioner, again through § 1983, challenged the constitutionality of a three-drug sequence likely to be used by Florida to execute him.[39] *Hill* presented the same basic issue as in *Nelson*: whether the claim should be brought as a federal habeas claim or as a § 1983 claim.[40]

After setting forth the general propositions regarding when a claim sounds in federal habeas as opposed to § 1983, the Court looked toward its earlier decision in *Nelson*. The Court stated that the issue in *Nelson* was "whether a challenge to a lethal injection procedure must proceed as a habeas corpus action" and that "*Nelson* did not decide this question."[41] The Court emphasized that *Nelson* was not required to answer that question because "[t]he lawsuit at issue, as the Court understood the case, did not require an injunction that would challenge the sentence itself."[42] And the Court later stated again that "[t]he suit [in *Nelson*] did not challenge an execution procedure required by law, so granting relief would not imply the unlawfulness of the lethal injection sentence."[43]

The Court concluded that the same was true in *Hill*: "Here, as in *Nelson*, [the petitioner's] action if successful would not necessarily prevent the State from executing him by lethal injection."[44] The Court observed that the complaint did not generally challenge the death sentence but only the manner in which Florida intended to execute him. Notably, the petitioner conceded that there were other constitutional ways to execute him. And it appeared that even if the petitioner received the requested injunction, it would not "leave the State without any

---

[38] *Id.*

[39] *Hill, supra* note 24.

[40] See *id.*

[41] *Id.*, 547 U.S. at 579.

[42] *Id.*

[43] *Id.*, 547 U.S. at 580.

[44] *Id.*

other practicable, legal method of executing [the petitioner] by lethal injection."[45] The Court also observed that "Florida law [did] not require the department of corrections to use the challenged procedure."[46] Thus, the petitioner's "challenge appear[ed] to leave the State free to use an alternative lethal injection procedure."[47] Under those circumstances, the Court concluded that § 1983 was an appropriate vehicle for the petitioner to bring his claim.

Based on Ryan's appellate brief, and as we understand it, he first argues that neither *Nelson* nor *Hill* hold that method-of-execution claims *must* be brought under § 1983. Instead, *Nelson* and *Hill* hold only that § 1983 was a proper avenue (but not necessarily the only one) to bring those particular claims, because they did not fall within the "core" of habeas corpus. Ryan argues that nothing would have prevented those claims from being brought as a federal habeas claim. In other words, Ryan argues that method-of-execution claims, even if proper under § 1983, can also be brought in federal habeas. To the extent that *Moore* concluded otherwise, Ryan claims we erred.

We first note that whether Ryan's position is correct is unclear. The federal circuit courts, following *Nelson* and *Hill*, are split on whether method-of-execution claims must be brought under § 1983.[48] And more broadly, the federal circuit courts are split on the overlap, if any, between habeas corpus and § 1983. While it is clear that a claim which falls within the "core" of habeas corpus is not cognizable under § 1983,[49] what is not so clear is whether a claim that is cognizable under § 1983 (falling outside the "core" of habeas corpus) may still be brought in federal habeas; in other words, whether federal habeas is *limited* to "core" claims. The U.S. Supreme Court

---

[45] *Id*.

[46] *Id*.

[47] *Id*., 547 U.S. at 580-81.

[48] Compare, e.g., *Adams v. Bradshaw*, 644 F.3d 481 (6th Cir. 2011), with *Tompkins v. Secretary, Dept. of Corrections*, 557 F.3d 1257 (11th Cir. 2009), and *Rachal v. Quarterman*, 265 Fed. Appx. 371 (5th Cir. 2008).

[49] See *Nelson, supra* note 23.

has not answered that question.[50] And the federal circuit courts are split on that issue.[51]

More important, even assuming Ryan is correct, we fail to see how this is relevant to whether Ryan's claims are cognizable in postconviction. If a claim is proper under both federal habeas and § 1983, then it is not proper under postconviction. This is because a claim which could be brought under both federal habeas and § 1983 falls outside the "core" of habeas corpus. That is, it does not attack the fact of the conviction or the duration of the sentence.[52] Such a claim, even if meritorious, would not render the judgment void or voidable, as § 29-3001 requires. Only a claim which falls within the "core" of habeas corpus could be cognizable in postconviction; so whether a method-of-execution claim that is proper under § 1983 is also proper under federal habeas is irrelevant to the issue at hand.

Ryan also argues that *Nelson* and *Hill* implied that under certain circumstances, a method-of-execution claim could be viewed as an attack on the sentence itself. If that were so, then the claim would fall within the "core" of habeas corpus and, by analogy, would be cognizable in postconviction. Ryan argues that *Nelson* and *Hill* outlined what those circumstances would be; essentially, where the challenged method of execution is statutorily mandated and, as a result, the State has no practicable alternative procedure to implement the death penalty. Ryan argues that those circumstances are present here, where the procedure is effectively mandated by statute,[53] and that if the State were restrained from executing him under the current protocol, it would be unable to easily implement an alternative lethal injection procedure. This was not the case in *Moore*, so Ryan argues that it does not control and that

---

[50] See *Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014).

[51] See *id*. (collecting cases). Compare, also, *McNabb v. Commissioner Ala. Dept. of Corrections*, 727 F.3d 1334 (11th Cir. 2013), with *Docken v. Chase*, 393 F.3d 1024 (9th Cir. 2004).

[52] See *Nelson, supra* note 23.

[53] See *Lariat Club v. Nebraska Liquor Control Comm*., 267 Neb. 179, 673 N.W.2d 29 (2004).

because his claims are effectively attacks on his sentence, they are cognizable in postconviction.

We disagree. We acknowledge that *Nelson* and *Hill* intimated that, under certain circumstances, a method-of-execution challenge might be considered an attack on the sentence (and therefore cognizable only in federal habeas, and by analogy, in postconviction).[54] But although the Court intimated that, it did not explicitly hold that. Instead, in *Nelson*, the Court stated that if the challenged procedure were statutorily required, there "*might* [be] a stronger argument that success on the merits, coupled with injunctive relief, would call into question the death sentence itself."[55] And in *Hill*, the Court noted that under the circumstances, "injunctive relief *could not be seen* as barring the execution of [the petitioner's] sentence," and later noted that "[i]f the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus *might* be proper."[56] So, we do not see *Nelson* and *Hill* as clearly holding that where the challenged procedure is statutorily mandated, a method-of-execution claim is effectively an attack on the sentence.

More important, regardless what the U.S. Supreme Court has intimated in *Nelson* and *Hill*, we continue to adhere to the view that a method-of-execution claim cannot be considered an attack on the sentence itself. To be sure, as the Court stated in *Nelson*, "imposition of the death penalty presupposes a means of carrying it out," and when a procedure is statutorily required and found unconstitutional, replacing it with a constitutional one "impos[es] significant costs on the State and the administration of its penal system."[57] And it is also true that the State "retains a significant interest in meting out a sentence of death in a timely fashion."[58]

---

54  See, *Hill, supra* note 24; *Nelson, supra* note 23.

55  *Nelson, supra* note 23, 541 U.S. at 645 (emphasis supplied).

56  *Hill, supra* note 24, 547 U.S. at 581-82 (emphasis supplied).

57  *Nelson, supra* note 23, 541 U.S. at 644.

58  *Id.*

But that does not change the fact that the death penalty, properly imposed, is plainly constitutional.[59] Nor does it change the fact that a method-of-execution claim "does not directly call into question the 'fact' or 'validity' of the sentence itself—by simply altering its method of execution, the State can go forward with the sentence."[60] Granted, if it's statutorily required (as it effectively is here), it would take some time to adopt a new procedure; but in our view, that does not affect the validity of the sentence, only the time it takes to carry it out. And unless and until the U.S. Supreme Court clearly holds otherwise, on a constitutional basis, we will continue to follow our holdings in *Moore* (and *Torres*, *Ellis*, and *Mata*) that a method-of-execution claim, even if successful, would not render the judgment void or voidable. Such claims are therefore not cognizable in postconviction.

## CONCLUSION

We affirm the district court's order dismissing Ryan's motion without an evidentiary hearing, because Ryan's motion failed to state a claim for postconviction relief. Ryan's second claim had no legal basis, and Ryan's other claims were method-of-execution claims, which were not cognizable in postconviction.

AFFIRMED.

CASSEL, J., not participating.

---

[59] See, e.g., *Kansas v. Marsh*, 548 U.S. 163, 126 S. Ct. 2516, 165 L. Ed. 2d 429 (2006).

[60] *Nelson, supra* note 23, 541 U.S. at 644.